IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**NUTRIEN AG SOLUTIONS, INC.**     **PLAINTIFF**

**V.**     **NO. 3:25-CV-137-DMB-RP**

**RAYMOND ANTHONY**     **DEFENDANT**

**ORDER**

Nutrien Ag Solutions, Inc., moves for a default judgment on its breach of contract claim against Raymond Anthony. Because a default judgment is procedurally warranted and the pleadings establish a sufficient basis for a default judgment, a default judgment will be entered.

**I**
**Procedural History**

On May 5, 2025, Nutrien Ag Solutions, Inc., filed a complaint in the United States District Court for the Northern District of Mississippi against Raymond Anthony. Doc. #1. In the complaint, Nutrien alleged that Anthony breached a credit agreement with it, for which Nutrien seeks damages "in an amount no less than $236,623.74 together with pre- and post-judgment interest, plus attorneys' fees, costs, and all other expenses incurred in connection with all legal measures and litigation undertaken to collect the amounts owed." *Id.* at 3–4. Anthony was personally served the summons and complaint on May 6, 2025. Doc. #5. Anthony was also served by "certified mail, return receipt with signature of Tina Anthony on May 27, 2025." Doc. #6 at PageID 23.

On July 16, Nutrien moved for an entry of default against Anthony based on Anthony's failure to answer or otherwise defend.[1] Doc. #10. The Clerk of the Court entered a default against

---

[1] On July 9, pointing out that "the clerk has twice docketed notices of [Anthony's] past due answer, and yet [Nutrien] has taken no action to obtain an entry of default," United States Magistrate Judge Roy Percy ordered Nutrien to show

Anthony the same day. Doc. #11. On July 23, Anthony filed an answer to the complaint but United States Magistrate Judge Roy Percy struck Anthony's answer because it was filed after the default was entered against him. Docs. #12, #13.

On October 17, 2025, Nutrien filed a motion for a default judgment against Anthony. Doc. #14. Anthony did not respond to the motion and the time within which he could do so has passed. L.U. Civ. R. 7(b)(4).

## II
## Analysis

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, a default may be entered "against a party when it 'has failed to plead or otherwise defend' itself." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (quoting Fed. R. Civ. P. 55(a)). Three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the court clerk; and (3) a default judgment granted by the court. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) ("After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a default judgment.") (emphasis omitted). Because the first two steps have been satisfied here, the Court must determine whether to enter a default judgment against Anthony. In making this determination, the Court considers (1) "whether the entry of default judgment is procedurally warranted;" (2) "whether there is a sufficient basis in the pleadings for the judgment;" and (3) "what form of relief, if any, the plaintiff should receive." *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015).

---

cause why its claims against Anthony should not be dismissed for failure to prosecute. Doc. #7. Nutrien's July 16 response to the show cause order explained that it did not previously seek an entry of default because it was "attempting in good faith to settle its claims against Anthony." Doc. #9 at 3.

2

### A. Procedural Justification

In determining whether a default judgment is procedurally warranted, a court should consider (1) "whether material issues of fact are at issue;" (2) "whether there has been substantial prejudice;" (3) "whether the grounds for default are clearly established;" (4) "whether the default was caused by a good faith mistake or excusable neglect;" (5) "the harshness of a default judgment;" and (6) "whether the court would think itself obligated to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

First, where, as here, a party fails to respond to or answer the complaint,[2] there are no material issues of fact at issue. *See Martinez v. Eltman L., P.C.*, 444 F. Supp 3d 748, 753 (N.D. Tex 2020) ("[B]ecause Eltman has not filed any responsive pleading, there are no materials facts in dispute."). Second, Anthony's failure to respond "'threatens to bring the adversary process to a halt, effectively prejudicing [Nutrien's] interests.'" *Id.* (quoting *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011)). Third, as mentioned above, the grounds for default (default by Anthony and entry of default by the Clerk) have been clearly established. Fourth, there is no evidence before the Court that the default was caused by a good faith mistake or excusable neglect. Fifth, Anthony has not attempted to set aside the default since it was entered in July over four months ago. *See Helena Chem. Co v. Aylward*, No. 4:15-cv-96, 2016 WL 1611121, at *2 (N.D. Miss Apr. 21, 2016) ("[W]hile default judgment is a harsh remedy, any harness is mitigated where, as here, the defendant has had substantial time to correct the default."). Finally, if Anthony later seeks to challenge the default, the Court is

---

[2] Anthony may not be deemed to have appeared based on a stricken answer, especially since he has not moved to have the entry of default set aside. *See ABC Supply Co., Inc. v. All in One Renovations LLC*, No. 3:25-cv-144, 2025 WL 3022299, at *2 n. 4 (N.D. Miss. Oct. 29, 2025) ("The Court agrees that [a defendant] may not be deemed to have appeared based on a stricken answer."). Even if Anthony was found to have appeared, his stricken answer did not contest any of the factual allegations in Nutrien's complaint; rather, Anthony's stricken answer merely stated, "I plan to pay this by Oct 15 2025 when we start harvesting crops." Doc. #12.

3

unaware of any facts that would obligate it to set aside the default. So, considering all these factors, a default judgment is procedurally warranted here.

### B. Sufficient Basis in the Pleadings

"Even when a defendant is in default, a plaintiff is not 'entitled to default judgment as a matter of right.'" *Escalante v. Lidge*, 34 F.4th 486, 492 (5th. Cir. 2022) (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)). "[A] court may still deny default judgment if the plaintiff has failed to state a claim on which relief can be granted." *Id*. at 493. The complaint's factual allegations must "'be enough to raise a right to relief above the speculative level.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F. 3d 490, 498 (5th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he district court takes as true the facts asserted by a plaintiff against a defaulting defendant" because "'[t]he defendant, by his default, admits the plaintiff's wellpleaded allegations of fact.'" *Escalante*, 34 F.4th at 492 (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

#### 1. Factual allegations

On October 16, 2019, Raymond Anthony entered into a Credit Agreement ("Agreement") with Nutrien Ag Solutions, Inc., of up to $200,000. Doc. #1 at 2. Under the Agreement, Anthony agreed to pay Nutrien for all credit purchases applied to his account in full, along with accumulated finance charges, fees, and expenses due by the maturity date. *Id.*; Doc. #1-1 at PageID 7. The Agreement states that a default may occur where Anthony fails to make payment in full on a timely basis; that upon default the entire unpaid balance of Anthony's account will become immediately due and payable; and that Anthony agrees to pay all costs and expenses incurred by Nutrien as the result of such default. Doc. #1 at 2; Doc. #1-1 at PageID 7.

As of November 2024, Anthony's account balance totaled $223,032.10, constituting an

event of default. Doc. #1 at 3. On February 13, 2025, Nutrien sent Anthony a letter "mak[ing] a demand on [him], … for full payment of no less than $223,032.10 within thirty (30) days."[3] *Id.*; Doc. #1-3 at 1. Anthony or Anthony's agent received the demand letter on February 15, 2025.[4] Doc. #1 at 3; Doc. #1-4. Anthony has not paid the account balance. Doc. #1 at 3.

### 2. Claim

Nutrien seeks a default judgment on its sole claim for breach of contract. For a breach of contract claim under Mississippi law,[5] a plaintiff must demonstrate "(1) 'the existence of a valid and binding contract,' and (2) a showing 'that the defendant has broken, or breached it.'" *Maness v. K & A Enters. of Miss., LLC*, 250 So. 3d 402, 414 (Miss. 2018) (quoting *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224 (Miss. 2012)). A binding contract has "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *White v. Jernigan Copeland Att'ys, PLLC*, 346 So. 3d 887, 896 (Miss. 2022) (cleaned up).

Here, Nutrien pled the existence of a valid and binding contract (the Agreement) between it and Anthony. Doc. #1 at 2. Under the Agreement, Nutrien agreed to sell to Anthony on credit, and Anthony agreed to pay Nutrien for all credit purchases applied to his account, satisfying the first, second, third, and fifth elements of a valid contract. *Id.* There is no indication that any party

---

[3] The demand letter further stated that if the account balance is not paid in full within thirty days, Nutrien reserves the right to pursue legal action to collect the balance owed by Anthony plus attorneys' fees and expenses. Doc. #1 at 3; Doc. #1-3 at PageID 9.

[4] Tina Anthony signed the receipt indicating the delivery date as February 15, 2025. Doc. #1-4 at PageID 13.

[5] The Agreement contains a choice of law clause that provides it "will be construed and interpreted in accordance with federal law and to the extent not preempted by federal law, the laws of the state in which the sale of the products and services was made, without regard to internal principles of conflict of laws." Doc. #1-1 at PageID 7. Generally, Mississippi upholds choice of law provisions "where the contract is valid and binding." *Lagrone* v. *OMNOVA Sols.*, No. 1:16-cv-159, 2018 WL 1570810, at *2 (N.D. Miss. Mar. 31, 2018).

lacked capacity to contract. *See Frierson v. Delta Outdoor Inc.*, 794 So. 2d 220, 224 (Miss. 2001) ("The law presumes a person sane and mentally capable to enter into a contract. The burden is upon the party seeking to avoid an instrument on the ground of insanity or mental capacity to establish it by a preponderance of proof.") (internal citation omitted). As to the final element, the Court is unaware of any legal prohibition precluding contract formation. Because Nutrien has alleged the existence of a valid contract and its breach by Anthony in failing to pay the balance due on his account, there is a sufficient basis in the pleadings for a default judgment.

### C. Relief

"A default judgment establishes the defendant's liability but not the quantity of damages." *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 761 (5th Cir. 2019). "[T]he burden of establishing damages rest[s] squarely and solely on [the plaintiff]." *Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457 (6th Cir. 2011). "[A] plaintiff seeking monetary damages for breach of contract must put into evidence, with 'as much accuracy as' possible, proof of the damages being sought." *Bus. Commc'ns*, 90 So. 3d at 1225 (quoting *Thomas v. Glob. Boat Builders & Repairmen Inc.*, 482 So. 2d 1112, 1116 (Miss. 1986)).

Nutrien's motion seeks a default judgment "in the amount of $242,120.47, plus $21,357.00 in attorneys' fees and $1,870.00 in expenses incurred through September 15, 2025." Doc. #14 at 1. To support these amounts, Nutrien relies on an affidavit of Jeff Cochran, a Special Assets Manager for Nutrien; Anthony's August 2025 account statement; and an affidavit of Abbey Adcock Reeves, an "associate with the law firm of Jones Walker LLP." Docs. #14-1, #14-2, #14-3.

### 1. Outstanding balance

Cochran attests that Anthony's account balance as of the date the complaint was filed was

$236,623.74. Doc. #14-1 at 2. Considering Cochran's affidavit, in conjunction with the August 2025 account statement, Nutrien has presented sufficient evidence of the $236,623.74 unpaid balance owed by Anthony as of May 5, 2025.

### 2. Pre-judgment interest

In diversity cases, "[s]tate law governs the award of prejudgment interest." *Harvey v. Caesars Ent. Operating Co., Inc.*, 790 F. App'x 582, 593 (5th Cir. 2019) (quoting *Harris v. Mickel*, 15 F.3d 428, 429 (5th Cir. 1994)) (internal quotation marks omitted). Mississippi Code § 75-17-7 provides:

> All judgments or decrees founded on any sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint.

"The Mississippi Supreme Court has indicated that the second sentence of § 75-17-7 applies to whether prejudgment interest should be awarded in contract cases where no rate of interest is specified." *Harvey*, 790 F. App'x at 593.

"Under Mississippi law, prejudgment interest may be allowed in cases where the amount due is liquidated when the claim is originally made." *Burnsed Oil Co. Inc. v. Grynberg*, 320 F. App'x 222, 232 (5th Cir. 2009) (quoting *Upchurch Plumbing, Inc. v. Greenwood Utils. Comm'n*, 964 So. 2d 1100, 1117 (Miss. 2007)). Where pre-judgment interest is to be awarded, "it dates from the breach of contract." *Id.* (quoting *Est. of Baxter v. Shaw Assocs., Inc.*, 797 So. 2d 396, 403 (Miss. Ct. App. 2001)) (internal quotation marks omitted).

In its complaint, Nutrien requests pre-judgment interest. Doc. #1 at 4. In its memorandum brief, Nutrien specifies that $5,496.73 in interest accrued from the date the complaint was filed on

May 5 through July 31.[6] Doc. #15 at 2. Because Cochran's affidavit attests to this pre-judgment interest amount, Doc. #14-1 at 2, Nutrien has provided sufficient evidence that Anthony owes $5,496.73 in pre-judgment interest. Accordingly, the Court will award pre-judgment interest of $5,496.73.

### 3. Post-judgment interest

"[I]n diversity cases, federal law controls the award of postjudgment interest, including decisions about when postjudgment interest begins to accrue." *Harvey*, 790 F. App'x at 594 (quoting *ExxonMobil Corp. v. Elec. Reliability Servs., Inc.*, 868 F.3d 408, 419 (5th Cir. 2017)) (internal quotation marks omitted). "Postjudgment interest is not discretionary but 'shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield.'" *Celtic Marine Corp. v. James C. Justice Cos.*, 593 F. App'x 300, 305 (5th Cir. 2014) (quoting *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 456-57 (5th Cir. 2013)). "A contract can validly establish a different rate, but it 'must do so using clear, unambiguous, and unequivocal language.'" *Celtic*, 593 Fed. App'x at 305 (quoting *Tricon Energy*, 718 F.3d at 458–59).

In its complaint, Nutrien requests post-judgment interest. Doc. #1 at 4. Because the Agreement does not specify an alternative post-judgment interest rate, *see generally* Doc. #1-1, Nutrien will be allowed post-judgment interest at the statutory rate.

---

[6] The Agreement provides that upon default, the penalty rate stated in the Approval Letter will apply, and finance charges will continue to accrue after the maturity date. Doc. #1-1 at PageID 7. But there is no Approval Letter attached to the complaint or to the motion for default judgment. The only document in the record from which the Court can glean a finance charge rate is the "Terms and Conditions" page attached to the August 2025 monthly account statement made an exhibit to the motion. Doc. #14-2. It specifies, "Any invoice not paid in full by the 25th of the month will be assessed a finance charge of 2% per month (24.0 % APR) except [in the state of Mississippi];" in Mississippi, the monthly rate is 1.75% with an APR of 21%. *Id.* at PageID 94. So, the Court concludes that this provision—rather than an unspecified penalty rate— provides the rate of pre-judgment interest in the form of a finance charge. Such appears to be consistent with the finance charge entries on the A/R Ledger attached to the complaint as an exhibit. Doc. #1-2.

8

### 4. Attorneys' fees and costs

"Under Mississippi law, attorney's fees 'cannot be awarded absent a relevant contractual provision or statutory authority.'" *Harvey*, 790 F. App'x at 596 (quoting *A&F Props., LLC v. Lake Caroline Inc.*, 775 So. 2d 1276, 1282 (Miss. Ct. App. 2000)). Where a contract provides for such fees, the Court may award them. *Bluewater Logistics, LLC v. Williford*, 55 So. 3d 148, 164 (Miss. 2011). Here, in the Agreement, Anthony agreed to pay all costs and expenses incurred by Nutrien as the result of a default, including court costs, expenses of collection, and reasonable attorneys' fees, to the greatest extent not prohibited by applicable law. Doc. #1-1 at PageID 7.

An award of attorney's fees must be reasonable. *Weaver v. Ross*, 391 So. 3d 1240, 1248 (Miss. Ct. App. 2024). To calculate a reasonable fee award, courts use the lodestar method which entails using "the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate." *Tupelo Redev. Agency v. Gray Corp.*, 972 So. 2d 495, 521–22 (Miss. 2007) (quoting *BellSouth Pers. Commc'ns, LLC v. Bd. of Supervisors of Hinds Cnty.*, 912 So. 2d 436, 446–47 (Miss. 2005)) (emphases omitted). Once the lodestar amount is determined, a court must consider the twelve factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

#### a. Lodestar calculation

In Reeves' affidavit, she attests that Jones Walker charged Nutrien $21,357.00 in legal fees. Doc. #14-3 at 2–3. Reeves lists five Jones Walker attorneys and staff members who provided services for Nutrien in connection with this case, along with their hourly rates and hours logged: (1) "Richard Gaal, Partner" at an hourly rate of $550.00 for 12.6 hours; (2) "Chad Hammons, Partner" at an hourly rate of $450.00 for 0.4 hours; (3) "Abbey Adcock Reeves, Associate" at an hourly rate of $355.00 for 32.8 hours; (4) "R. Grantham Krag, Associate" at an hourly rate of

9

$300.00 for 7.1 hours; and (5) "Kasey Woods, Paralegal" at an hourly rate of $250.00 for 2.2 hours. *Id*. Reeves also states that "Jones Walker has incurred actual expenses in the amount of $1,870.00 as of September 15, 2025, including but not limited to filing fees, Pacer charges, copies, courier charges, and service of process fees;" Jones Walker "will incur more fees and expenses in attempting to collect a default judgment;" and the fees "are discounted rates less than the standard rates charged by Jones Walker" and "are reasonable and fairly standard for collection matters." *Id.* at 3, 5.

Based on the Court's review of the record, the specified hourly rates and the number of hours spent litigating this case are reasonable, especially given the $236,623.74 unpaid balance Anthony owed to Nutrien when the complaint was filed.[7] *See Weeks v. S. Bell Tel. and Tel. Co.*, 467 F.2d 95, 97 (5th Cir. 1972) ("The determination of a reasonable attorney's fee is left to the sound discretion of the trial judge."); *see also Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th Cir. 2006) ("There exists a strong presumption of the reasonableness of the lodestar amount.").

### b. *Johnson* factors

The *Johnson* factors to consider are (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10)

---

[7] The Mississippi Supreme Court has "traditionally approved as reasonable awards of attorneys' fees in collection matters in the amount of one-third of the indebtedness." *Dynasteel Corp. v. Aztec Indus., Inc.*, 611 So. 2d 977, 986 (Miss. 1992). The attorneys' fees that Nutrien requests here are well under one-third of the amount owed.

10

the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[8]  488 F.2d 714, 717–19 (5th Cir. 1974).

Because factors one, two, three, five, seven, eight, and nine are reflected in the lodestar amount, the Court will not consider them. *See Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 771 (5th Cir. 1996) ("'[T]he district court must be careful … not to double count a Johnson factor already considered in calculating the lodestar.'") (quoting *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993)).  And "[t]he Supreme Court has barred any use of the sixth factor." *Id.* at 772.  So, the Court limits its examination to the fourth, tenth, eleventh, and twelfth factors.

As to the fourth factor, Reeves' affidavit states that "Jones Walker attorneys and paralegal were not able to devote time to other matters while pursuing this matter." Doc. #14-3 at 3. Regarding the tenth and eleventh factors, respectively, Reeves states that "recovery of the deficiency amount or any part thereof is uncertain" and that Gaal "has represented Nutrien in various matters over the last several years." *Id.* at 4.  Based on the evidence submitted regarding factors four, ten, and eleven, no departure from the lodestar amount is warranted.  As to the twelfth factor, the Court concludes that the lodestar amount is in line with similar awards. *See, e.g., Harrison v. McMillan*, 828 So. 2d 756 (Miss. 2002) (affirming $32,833.67 attorneys' fee award in breach of contract case).  Accordingly, the Court will award attorneys' fees of $21,357.00, along with expenses in the amount of $1,870.00.

---

[8] These factors are virtually identical to those outlined in the Mississippi Rules of Professional Conduct regarding what should be considered in evaluating the reasonableness of an attorney's fee. *See* Miss. R. Pro. Conduct 1.5(a) ("The factors to be considered in determining the reasonableness of a fee include … (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.") (paragraph formatting omitted).

## III
## Conclusion

Nutrien's motion for default judgment [14] is **GRANTED**. A default judgment will be entered against Anthony in the amount of $265,347.47 ($236,623.74 for the unpaid account balance; $5,496.73 for pre-judgment interest; $21,357.00 for attorneys' fees; and $1,870.00 for expenses), along with post-judgment interest at the statutory rate.

**SO ORDERED**, this 2nd day of December, 2025.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**